# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Docket No. 1:24-CR-106** |
| **v.** | ) | |
| | ) | **Judge Travis R. McDonough** |
| **PATRICK BRYANT HAWLEY,** | ) | |
| | ) | **Magistrate Judge Mike Dumitru** |
| Defendant. | ) | |

## MOTION FOR A VARIANCE & SENTENCING MEMORANDUM IN SUPPORT

**COMES NOW**, the Defendant Patrick Hawley, through undersigned counsel, respectfully submits this memorandum in support of a variance pursuant to Fed. R. Crim. P. 32 (i)(1)(c) and 18 U.S.C. § 3553(a). Mr. Hawley has accepted responsibility for his actions and stands before this Court to be sentenced for a serious offense. The question before the Court is what punishment is sufficient to satisfy the purposes of federal sentencing without being greater than necessary. This motion for variance and sentence memorandum documents that 180 months is adequate punishment for this offense. Fifteen years is a very long time to be incarcerated, which will sufficiently punish the defendant consistent with the purposes of § 3553(a) and still offer him the slightest hope to meaningfully rebuild his life.

### I. Patrick Hawley's Life

Patrick Hawley's life has been marked by academic achievement, yet it's also been overshadowed at times by a long-standing personal struggle. Mr. Hawley was born and raised on Lookout Mountain. He pursued high school, college, and then law school diligently and successfully. He graduated from the University of Tennessee College of Law with high academic honors, fifth in his 2009 class. His honors include distinguished student attorney third year, Order

of the Coif, and Order of the Barristers. After graduation he returned to Chattanooga to practice law. He served clients faithfully, working for local firms before establishing his solo practice (PSR ¶ 225). By every account, his career outwardly reflected a young man with a promising future as a lawyer, following a path similar to his father's legal career.

Yet over time, that structure began to fray. Mr. Hawley's life grew increasingly solitary. The abandonment by his wife in 2017 was a catalyst for many of his future problems. The PSR details how health problems—including hypertension, ulcer disease, and chronic anxiety—combined with years of working alone, also eroded his mental well-being (PSR ¶¶ 69–75). After his marriage ended, the isolation of his law practice deepened as he withdrew from colleagues and the community. He lived an introspective, largely disconnected life, immersed in work and the digital world, but detached from meaningful personal contact.

The offense before the Court grew out of this isolation. It was not born of predation or violence, but of psychological decline, compounded by methamphetamine and alcohol use, poor judgment and loneliness. This does not lessen the seriousness of his conduct—it caused real harm—but it places it in context: a life that had come apart quietly, well before any criminal act occurred.

Looking back one can see the origin of Mr. Hawley's struggles from a childhood history of depression, Tourette's Syndrome with comorbidities of O.C.D. This sense of difference stems from his diagnosed Tourette's Syndrome. Mr. Hawley relates how he was punished has an elementary school student simply because his teachers did not know that his symptoms were Tourette's.

The Court should consider these formative and lifelong struggles part of a complex human picture. They neither fully explain nor excuse his offense, but they help to illuminate the internal

2

conflicts that defined his life long before this case. Recognizing this history provides context for a defendant whose wrongdoing occurred relatively recently and whose punishment, though necessary, should not completely erase the fuller story of who he is.

As Patrick was growing up, he experienced medical complications that would persist in adulthood. The PSR documents that Mr. Hawley suffered from hypertension, gastrointestinal distress, and recurring anxiety that required medical treatment (PSR ¶¶ 69–75). He also experienced insomnia and chronic tension headaches, conditions that compounded over time. These ailments, in combination, reflected a man who functioned at a high intellectual level but often under significant personal strain. He worked through pain, internalized stress, and, again, over time, withdrew further into solitude and routine.

In childhood, Patrick Hawley exhibited promise. He was a bright and curious boy who excelled academically but struggled to manage anxiety and social discomfort. Teachers and family members observed that his intellectual energy was often accompanied by restlessness, perfectionism, and emotional sensitivity. While not disabling, these characteristics created a sense of difference that shadowed him through adolescence. He was precocious, articulate, and serious-minded—traits that later made him an exceptional law student, but also one who found it difficult to disengage from obsessive focus or form easy relationships.

Patrick Hawley's life story is one not of sudden criminal intent but of a long silent decline—marked by early differences, lifelong emotional problems, and growing isolation. While deeply wrong, his conduct reflects the culmination of years of unaddressed personal struggle.

## II.   The Offense and Its Consequences

The PSR details the events that led to this conviction (¶¶ 24–26, pp. 7–8). Mr. Hawley engaged in online communications with a 14-year-old minor, resulting in her producing sexually

explicit material. The record confirms there was no physical contact, threat, or violence. After inappropriate online communication, Mr. Hawley ended contact, and the minor later reported the conduct to law enforcement (PSR ¶ 32, p. 9). This does not excuse the offense, but it underscores its boundaries. The harm here was serious, but it did not involve the aggravated features seen in many cases involving physical contact with minor victims.

The consequences have been severe. Mr. Hawley has lost his law license, his livelihood, and his standing in the community. His family's name has been publicly shamed, and his parents have borne emotional pain they could never have imagined. The punishment he faces now will be lengthy incarceration that is the result of his own self-destructive behavior.

### III.    The Guidelines and the Principle of Proportionality

The advisory Guideline in this case is 324 months to 360 months under USSG § 5G1.1(c)(1). While technically accurate, the enhancements collectively punish largely the same underlying conduct in multiple ways: the use of a computer, the age of the victim, and the nature of the communication amplify one another. The Guidelines' mechanical structure transforms Mr. Hawley's wrongdoing into an extremely harsh sentence reserved for the most egregious, violent offenders.

Mr. Hawley does not seek leniency in the abstract. He acknowledges that a lengthy sentence—fifteen years—is an extraordinary deprivation of liberty and is appropriate. But the concept of proportionality suggests that a first-time offender who never touched another person, and who has shown genuine remorse, be treated severely but fairly. The statutory minimum of fifteen years is not a light sentence but a severe and lifelong punishment. It will incapacitate Mr. Hawley through his most productive years, ensure punishment, and meet every purpose of § 3553(a).

4

### IV.     The Person Before the Court

Mr. Hawley is a 43-year-old former attorney who devoted much of his life to helping others and now faces the consequences of profound misjudgment. He is deeply remorseful. He is a man who is introspective, often self-critical, and capable of insight. The PSR confirms that he has expressed genuine regret for his actions and awareness of their impact (PSR ¶ 82).

Mr. Hawley's education and experience equip him to use his time in custody positively. He plans to serve meaningfully within the Bureau of Prisons—ideally at FCI Milan in Michigan or FCI Ashland in Kentucky, where he can contribute to legal education and assist other inmates in navigating their own cases, or a similar facility where he can have a positive impact on the lives of other inmates. That work would reflect a path toward rehabilitation consistent with the principles of justice and human dignity.

### V.     Character Letters.

Attached hereto as Exhibit "A" is a character letters from Mr. Hawley's parents. Excerpts from the letters are as follows:

> <u>David and Claire Hawley, Patrick's parents</u>: *"It is our wholehearted position, that wherever life brings him, those people in Patrick's community will benefit through his participation by way of his work ethic, intelligence and creativity... It was when his wife of seven years raided their savings and abandoned him for someone else that sent him into a downward spiral. Her interest in unconventional sex, as well, did Patrick a grave disservice. He became increasingly introverted and private spending time alone on his computer."*

### VI.     The Parsimony Principle

Congress built into the Sentencing Reform Act of 1984 an explicit command that every federal sentence must be "sufficient, but not greater than necessary" to accomplish the purposes of punishment set out in 18 U.S.C. § 3553(a)(2). This statutory command—often called the parsimony principle—is the overarching directive of federal sentencing. It requires the Court to

5

impose the minimum term that achieves justice: a sentence that punishes, deters, protects the public, and promotes rehabilitation without crossing the line into excess. See *United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38 (2007).

Applying the parsimony principle here means recognizing that the advisory Guidelines already prescribe an exceptionally long period of imprisonment. Additional punishment beyond what is necessary would not serve a legitimate sentencing purpose. A sentence of approximately fifteen years—180 months—adequately reflects the seriousness of the offense, provides just punishment, deters future misconduct, and protects the public. Anything substantially longer would exceed what § 3553(a) demands and violate Congress's explicit instruction that federal sentences be restrained, individualized, and no greater than necessary to achieve their lawful aims.

## VII. Conclusion

Patrick Hawley will spend the next many years of his life paying for his crime. The Court's decision will determine how long he remains incarcerated and whether the justice rendered is appropriately tempered. The defense respectfully submits that a sentence of 180 months is sufficient to meet the goals of sentencing under § 3553(a)—punishment, deterrence, protection of the public, and the opportunity for rehabilitation.

Respectfully submitted,

**DAVIS & HOSS P.C.**

/s/ Lee Davis
Lee Davis, TN BPR#15958
850 Fort Wood Street
Chattanooga, TN 37402
423-266-0605
423-266-0687—Fax

6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

This the 27th day of October 2025.

/s/ Lee Davis